**UNIVERSAL MOTOR OILS CO., INC., Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

**Civ. A. No. 89–1662–T.**

United States District Court, D. Kansas.

Aug. 15, 1990.

John Terry Moore, William F. Bradley, Jr., Hinkle, Eberhart & Elkouri, Wichita, Kan., for plaintiff.

Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, Kan., Robert M. Newbury, Thomas P. Arden, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiff's application for an order to show cause why defendant should not be held in civil contempt (Doc. 43). Plaintiff filed its application for an order to show cause why defendant Amoco Oil Company (Amoco) should not be held in civil contempt for violating the preliminary injunction of May 24, 1990. Plaintiff alleges that defendant's modified mark (2100) is a colorable imitation of plaintiff's 21C trademark and is so similar to plaintiff's 21C trademark as to cause confusion, mistake, or both. Plaintiff asserts that it has incurred costs and attorneys' fees in initiating its application. Plaintiff seeks an order holding Amoco in civil contempt and assessing a fine in an amount equal to plaintiff's litigation and investigation expenses and costs incurred in pursuing this matter. In the alternative, plaintiff requests a modification of the preliminary injunction to enjoin defendant from using the mark 2100 on its motor oil. Both parties have requested Rule 11 sanctions.

The facts are not in dispute. Amoco has submitted the declarations of C. William Robertson and Robert E. Blankenbaker. Attached to Robertson's declaration are color photocopies of Amoco's new quart and gallon bottle labels for its oil. Amoco waived an evidentiary hearing. The court held oral argument on July 26, 1990. The court now makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. The preliminary injunction entered by the court May 24, 1990 enjoined the defendant from the use of the trademark "21C or any counterfeit, copy, simulation or colorable imitation thereof...." Memorandum and Order, Doc. 34.

2. Plaintiff posted the required surety bond on May 30, 1990, placing the injunction into effect.

3. Following the entry of the preliminary injunction, Amoco ceased using the mark 21C for its new diesel engine oil. Amoco has not appealed the preliminary injunction.

4. Amoco selected the name "AMOCO 2100" to replace "AMOCO 21C."

5. By memorandum dated May 30, 1990, Amoco notified its distributors of the injunction and the name change. Amoco has since changed all labels and repackaged the containers of oil.

6. Amoco selected the designation 2100 after consultation with in-house counsel and litigation counsel, both of whom ad-

vised that the new designation was in compliance with the injunction.

7. On June 4, 1990, plaintiff learned that defendant was changing its mark from 21C to 2100.

8. Plaintiff advised defendant that if defendant adopted this mark, plaintiff would file a motion for contempt.

9. Amoco responded that it was intending to use the mark AMOCO 2100 for its motor oil, in keeping with the previous designations AMOCO 200, AMOCO 300, and AMOCO 400 for other motor oils.

10. Amoco's new labels for its quart and gallon bottles of oil follow the same general design format as its previous 21C labels, with some slight wording change. The principal difference is the change from 21C to 2100; otherwise, the labels looks substantially similar. *See* Exhibits A and B attached hereto.

11. The new 2100 labels also generally correspond with the design format of Amoco's other motor oil bottle labels in terms of style of lettering and graphics. *See* Exhibits C–E attached hereto. Amoco's new mark 2100 is not, however, consecutive to its earlier marks for its motor oils.

12. The court finds that Amoco intended to choose a new trademark which was as close as possible to the 21C trademark which it was enjoined from using. This conclusion is based in part on the fact that there is a vast pool of trademarks from which to choose. Many alternatives exist which would suggest the "twenty-first century," a phrase or time designation with which defendant seems to be enamored as an advertising incentive to competitive sale of its product, even though the century change is only ten years hence.

13. The court's conclusion that Amoco made the least change necessary in its mark is also based on the speed with which the defendant introduced its new mark. The record reflects that plaintiff posted the required surety bond on May 30, 1990, placing the injunction into effect. That same day, defendant notified its distributors that Amoco had been enjoined from using the name 21C and informed its distributors of the change in name to 2100. *See* Doc. 48, Declaration of C. William Robertson, ¶ 1 &

Exh. 1. An inference could arise that Amoco had chosen its new mark prior to the injunction, ready to be introduced if the court did enjoin the use of 21C.

14. Based on the applicable legal principles enunciated in the preliminary injunction order (Doc. 34) with which the court is familiar and which are incorporated herein by reference, the court finds that Amoco's new mark 2100 so resembles plaintiff's 21C trademark as to be likely to cause confusion. As in the previous order, the confusion likely to occur is confusion as to sponsorship or affiliation between plaintiff's and defendant's products.

## CONCLUSIONS OF LAW

### A. Contempt Standards

1. The trial court has broad discretion in using its contempt powers to require adherence to court orders. *United States v. Riewe*, 676 F.2d 418, 421 (10th Cir.1982).

2. When reviewing the grant or denial of a motion for civil or criminal contempt, the court of appeals is limited to determining whether the district court's decision is an abuse of discretion. *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 226 (10th Cir.1979); *see also In re Grand Jury Proceedings*, 797 F.2d 906, 907 (10th Cir.1986); *United States v. Riewe*, 676 F.2d at 420.

3. In a civil contempt action, the proof of contempt must be clear and convincing. *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611, 614 (10th Cir.1983); *United States v. Professional Air Traffic Controllers Organization, Local 504*, 703 F.2d 443, 445 (10th Cir.1983).

4. The primary purpose of criminal contempt is to punish defiance of a court's authority. The normal beneficiaries of an order are the courts and the public interest. Civil contempt, on the other hand, is characterized by the court's desire to compel obedience to a court order or to compensate the litigant for injuries sustained as a result of the disobedience. The primary beneficiaries of a civil contempt order are the individual litigants. *Ager v. Jane C. Stormont Hospital & Training School for*

*Nurses,* 622 F.2d 496, 499–500 (10th Cir. 1980).

■ 5. In criminal contempt, willful disobedience must be proved beyond a reasonable doubt. Willfulness is not, however, an element of civil contempt. *TWM Manufacturing Co. v. Dura Corp.,* 722 F.2d 1261, 1272–73 (6th Cir.1983). The Supreme Court has long held that "The absence of wilfulness does not relieve from civil contempt.... Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

■ 6. Good faith is therefore not a defense to civil contempt. *TWM Manufacturing,* 722 F.2d at 1273; *see Cordero v. De Jesus–Mendez,* 867 F.2d 1, 21 (1st Cir. 1989); *Donovan v. Enterprise Foundry, Inc.,* 751 F.2d 30, 38 (1st Cir.1984); *Fortin v. Commissioner of Massachusetts Department of Public Welfare,* 692 F.2d 790, 796 (1st Cir.1982).

■ 7. Reliance upon advice of counsel is likewise not a defense to contempt. *Securities & Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 670 (5th Cir.1981).

8. Advice of counsel and good faith may affect the extent of the penalty, however. *TWM Manufacturing,* 722 F.2d at 1273; *First Financial Group,* 659 F.2d at 670.

9. Civil contempt occurs when a party fails to comply with a court order. That failure to comply need not be intentional. *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir.1986).

■ 10. Substantial compliance with the court order is a defense to civil contempt. If the violating party has taken "all reasonable steps" to comply with the order, technical or inadvertent violations will not support a finding of civil contempt. *Id.*

■ 11. A compensatory fine in a civil contempt action must be based on evidence of the complainant's actual loss. In the absence of evidence showing the amount of the loss, any sum is speculative. The court must have some basis for determining the amount and the reasonableness of the costs claimed. *Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224, 227 (10th Cir.1980).

12. The award of attorneys fees and expenses to a successful movant may be appropriate in a civil contempt proceedings. *TWM Manufacturing,* 722 F.2d at 1273.

■ 13. Civil contempt need not be willful to justify a discretionary award of attorneys fees and expenses as a remedial measure. *Perry v. O'Donnell,* 759 F.2d 702, 704 (9th Cir.1985).

14. The trial court has the discretion to analyze each case individually and decide whether an award of attorneys fees and expenses is appropriate. *Id.; see also Donovan v. Burlington Northern, Inc.,* 781 F.2d 680, 683 (9th Cir.1986); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1534 (11th Cir.1986).

B. Trademark Standards

15. The term colorable imitation is defined as follows:

The term "colorable imitation" includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive.

15 U.S.C. § 1127.

■ 16. A proven trademark infringer is required to keep a safe distance away from the dividing line between violation of and compliance with the injunction. The infringer "must do more than see how close [it] can come with safety to that which [it was] enjoined from doing." *Eskay Drugs v. Smith, Kline & French Laboratories,* 188 F.2d 430, 432 (5th Cir. 1951); *see also AMF, Inc. v. International Fiberglass Co.,* 469 F.2d 1063, 1065 (1st Cir.1972); *Plough, Inc. v. Kreis Laboratories,* 314 F.2d 635, 639 (9th Cir.1963) (quoting *Broderick & Bascom Rope Co. v. Manoff,* 41 F.2d 353, 354 (6th Cir.1930)); *World's Finest Chocolate, Inc. v. World Candies, Inc.,* 409 F.Supp. 840, 844 (N.D. Ill.1976), *aff'd without published opinion,* 559 F.2d 1226 (7th Cir.1977).

17. An infringer is required to keep a safe distance away from the margin line,

even if that requirement is a handicap. *Independent Nail & Packing Co. v. Stronghold Screw Products*, 215 F.2d 434, 436 (7th Cir.1954) (quoting *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir.1930)).

■■■ 18. A previous infringer of a mark has a greater duty to adopt a distinctive mark. *Cyclonaire Corp. v. United States Systems, Inc.*, 209 U.S.P.Q. 310, 315 (D.Kan.1980).

19. The district court has substantial discretion to decide how close is "too close." *Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1124 (7th Cir.1988); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir.1985), *cert. denied*, 475 U.S. 1147, 106 S.Ct. 1801, 90 L.Ed.2d 346 (1986).

■■■ 20. A defendant who has previously been enjoined from infringing a trademark cannot assert that his new design should be accorded the same leniency that a good faith user might ask for. *Service Ideas*, 846 F.2d at 1124.

21. The defendant has the increased burden to emphasize the distinctions made in its new design. *Service Ideas*, 846 F.2d at 1124. "The court may require the contemnor to choose a distinctively different mark rather than to hew so close to the line that the parties must interminably return to court to haggle about every mark." *Scandia Down Corp.*, 772 F.2d at 1432.

■■■ 22. Amoco is relying on the defenses of good faith and advice of counsel. Amoco asserts that since it acted in the good faith belief and on the advice of counsel that it was conforming to the court's injunction, it should not be held in contempt. Amoco quotes *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir.1982) for support. Defendant's Response, Doc. 46, at p. 11. Amoco has, however, taken the court's statement out of context. The relevant passage read:

> Where the language of a consent judgment is too vague, it cannot be enforced; to do so would be an invalid exercise of judicial authority. *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Associa-*

*tion*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236, 245 (1967) (reversing a civil contempt judgment founded upon a decree too vague to be understood); *see United States v. Joyce*, 498 F.2d 592, 596 (7th Cir.1974) (reversing a criminal contempt judgment because terms of a court order should be clear and specific and leave no doubt or uncertainty in the minds of those to whom it is addressed). Thus, if a defendant's action "appears to be based on a good faith and reasonable interpretation of [the court's order]," he should not be held in contempt. *Rinehart v. Brewer*, 483 F.Supp. 165, 171 (S.D.Iowa 1980).

*Vertex Distributing*, 689 F.2d at 889 (bracketed material in original). There has been no allegation that the court's injunction is too vague to be understood or enforced.

23. The defenses of good faith and reliance on advice of counsel fail as a matter of law. *See supra* Conclusions of Law ¶¶ 6–7.

24. 2100 is consistent with defendant's pattern of naming its motor oils in that it consists of a number followed by two zeros, i.e., "multiple hundreds." However, 2100 is not consecutive and can be said to reference 21C in the context that "C" stands for "hundred." Both 21C and 2100 may likewise be confusing in print, depending on the format. Amoco's earlier motor oils were named 200, 300, and 400.

25. Whether defendant's 2100 mark is "too close" to plaintiff's 21C mark is a matter left to this court's sound discretion (*see supra* Conclusion of Law ¶ 19) based on an application of the legal principles set forth above.

26. The issue posed here is a close call but the equities lie with the plaintiff. The court is aware that since plaintiff is a much smaller corporation than defendant, any confusion which results will hurt the plaintiff far more than it will hurt the defendant economically and diminish its property right in its trademark.

27. The court finds that defendant's new 2100 mark is a colorable imitation of plaintiff's 21C mark.

28. The court does not consider defendant's conduct to be contumacious; consequently, the court shall deny plaintiff's application for contempt. The court shall, however, modify the preliminary injunction to restrain the defendant from employing the mark 2100 on its motor oil.

### RULE 11 SANCTIONS

Amoco requests sanctions under Rule 11, arguing that plaintiff's application for contempt was not well grounded in fact and warranted by the law.

Plaintiff has responded with a request for sanctions, arguing that Amoco's sanction motion was not well grounded in fact and warranted by the law.

Rule 11 provides in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, ...

Fed.R.Civ.P. 11.

■ The Supreme Court has recently clarified the standards governing the consideration of Rule 11 sanctions. All aspects of a district court's Rule 11 determination lie within the court's discretion. The court will be reversed only if it has abused its discretion. A district court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

Amoco requests sanctions based on the following reasons: (1) that plaintiff apparently failed to consider the statutory definition of "colorable imitation;" (2) that plaintiff failed to consider the required standard of proof; (3) that plaintiff is attempting to claim a monopoly over any trademark utilizing the numbers "2" and "1" in succession; and (4) that plaintiff's position contradicts the position taken during the preliminary injunction hearing that it was making no claim to such a monopoly.

Plaintiff requests sanctions based on defendant's request for sanctions.

■ Addressing Amoco's request for sanctions, the court finds that plaintiff's "failure" to refer to the statutory definition of "colorable imitation" does not constitute a violation of Rule 11. Plaintiff cited the relevant case law governing the determination of whether defendant's new mark 2100 comes "too close" to plaintiff's mark 21C. The defendant has cited no authority to the contrary.

Plaintiff's "failure" to refer to the required standard of proof for civil contempt (clear and convincing evidence) is not a violation of Rule 11. Amoco has admitted that the facts are not in dispute, by waiving its right to a full evidentiary hearing and proceeding on two affidavits. Since the facts are not in dispute, the resolution of the issue (whether 2100 is "too close" to 21C) became a matter left to this court's sound discretion, based on the applicable legal principles.

Amoco's argument that plaintiff is attempting to monopolize "21" is merely Amoco's view of events.

Amoco's argument that plaintiff has taken a contradictory position, if true, is not sanctionable. Plaintiff originally protested defendant's use of "21C," which was identical to plaintiff's mark. Amoco has ceased using 21C as a mark, and has switched to the mark 2100. It is not inconsistent for plaintiff to protest the use of 2100 as a colorable imitation of 21C.

The court concludes that plaintiff did not violate Rule 11 in filing its contempt motion.

While the court disagrees with Amoco's arguments in its request for sanctions, the court does not believe that Amoco's con-

duct in requesting sanctions is itself sanctionable.

The positions taken by both parties had arguable foundation.

These conclusions are consistent with this court's philosophy of reserving Rule 11 sanctions for only the most egregious cases.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's application for contempt (Doc. 43) is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion to modify the preliminary injunction (Doc. 51) is hereby granted. The court's preliminary injunction dated May 24, 1990 (Doc. 34) is hereby modified to read as follows:

**IT IS BY THE COURT THEREFORE ORDERED** that the defendant Amoco Oil Company and its officers, agents, servants, employees, attorneys, and any other persons or entities in active concert or participation with defendant who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined pending entry of judgment in this action from any further use of the trademarks 21C and 2100 or any counterfeits, copies, simulations, or colorable imitations thereof, either alone or in combination with any other mark, word, name, or design, in any manner or form, on or in connection with any business, products, or services, on or in connection with oils, greases, fuels, lubricants, or similar products. Specifically, the defendant is ordered to cease and desist from further advertising of its product 21C and/or 2100, advise all its officers, employees, jobbers, and distributing agents of this order, and recall all product which has been distributed with such labelling.

**IT IS FURTHER ORDERED** that this preliminary injunction shall be effective upon the posting of a bond in the amount of $50,000 with the Clerk of the United States District Court, and shall remain in effect pending final judgment in this action.

IT IS FURTHER ORDERED that the bond previously posted by plaintiff remain in full force and effect.

IT IS FURTHER ORDERED that defendant's request for sanctions is hereby denied.

IT IS FURTHER ORDERED that plaintiff's request for sanctions is hereby denied. The court will rule on the issue of plaintiff's entitlement to attorney fees and costs at the appropriate time.

APPENDIX

# Amoco 21C:
# An exclusive diesel engine oil for 1990s' emissions specifications *and* today's performance requirements.

Amoco at 100 years challenges tomorrow with a technological breakthrough: Amoco 21C, the first premium heavy duty engine oil developed exclusively for diesels *without* the compromises others make to include the passenger car SG rating.

The EPA has mandated reductions in particulate emissions from heavy duty diesel engines to 0.25 grams per BHP-Hr for 1991, 0.10 grams per BHP-Hr for 1994. These will be maximum allowable limits for 290,000 miles of operation.

Particulates come from three main sources: Soot, sulfates (oxidized sulfur-containing compounds), and soluble organic fractions (SOF). Both fuel and lubricants contribute to all three.

A reduction in fuel sulfur levels (targeted at 0.05% in 1993) will help reduce sulfates. More fuel-efficient engines will help reduce soot, as will lower ash (metal and sulfates) containing oils. Lower sulfur levels in fuels will reduce the need for higher ash and TBN oils, benefiting particulate emissions from both fuel and lubricants. Better engine protection by the lubricant (deposit and ring wear control) will reduce the SOF contribution.

Amoco 21C is formulated to help reduce all three levels of particulates: Soot reduction by excluding ash-containing, passenger car additives found in "universal" SG/CE oils; sulfate reduction by reducing unnecessary sulfur-containing compounds; SOF reduction by providing better diesel engine piston deposit and wear control.

Formulated for the diesel fuels and engines of tomorrow, Amoco 21C Engine Oil also demonstrates superior performance with today's fuels and engines because of its proprietary additive system designed for diesel engine applications only.

EXHIBIT
B

1494

EXHIBIT

D

EXHIBIT

E