T.Y., a minor, by her next friend, Lynette PETTY, B.A., a minor, by his next friend, P.C., D.S., a minor by his next friends, A.M. and Lynette Petty, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SHAWNEE; Donald J. Cooper, Chairman, Victor W. Miller, Vice–Chairman, Winifred Kingman, member of the Shawnee County Commission, in their official capacities; Earl Hindman, Director of the Shawnee County Department of Corrections, in his official capacity; Gary Bayens, Administrator of Shawnee County Youth Center, in his official capacity, Defendants and Third–Party Plaintiffs,

v.

STATE OF KANSAS, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, and Donna L. Whiteman, the Secretary of Social and Rehabilitation Services, in her official capacity; Board of Education–Unified School District 501, Shawnee County, Kansas, Third–Party Defendants.

Civil Action No. 94–4079–DES.

United States District Court, D. Kansas.

Jan. 17, 1996.

Larry R. Rute, Kansas Legal Services, Inc., Topeka, KS, Claudia J. York, Shughart, Thomson & Kilroy, Kansas City, MO, Charles J. Hyland, Sprint Communications Company L.P., Law Department, Kansas City, MO, Judith A. Jones, Hiawatha, KS, for plaintiffs.

Mark L. Bennett, Jr., Ann L. Hoover, Bennett & Dillon, Topeka, KS, Susana L. Valdovinos, Office of County Counselor, Topeka, KS, Sandra L. Jacquot, Office of the County Counselor, Shawnee County, Kansas, Topeka, KS, for defendants.

Michael George, Kenneth R. Smith, Kansas Department of SRS, Topeka, KS, for Kansas Department of Social and Rehabilitation Services, Donna L. Whiteman.

John D. Ensley, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Unified School District 501, Topeka.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the plaintiffs' motion for an order requiring the defendants to show cause why they should not be held in contempt for disobedience of the Settlement Agreement and Consent Decree entered by this court on July 28, 1995 (Doc. 144).

### I. BACKGROUND

The plaintiffs filed this action on May 19, 1994, as a class action pursuant to 42 U.S.C. § 1983. The plaintiffs filed an amended complaint on June 3, 1994. The plaintiffs' suit challenged the conditions of confinement at the Shawnee County Youth Center ("SCYC"), and certain policies and practices employed in the administration of SCYC. On June 23, 1994, the plaintiffs filed a motion for a preliminary injunction to restrain the defendants from employing certain practices

and procedures at SCYC pending final resolution of this action.

On July 5, 1994, the defendants filed an answer to the plaintiffs' complaint. The defendants also filed on that date their complaint against the third-party defendants. The defendants submitted that they were not liable to the plaintiffs, but that in the alternative, judgment should be entered against the third-party defendants in an amount equal to the defendants' liability.

On August 2, 1994, the court approved a Joint Stipulation of Partial Settlement of Motion for Preliminary Injunction executed by the plaintiffs and defendants. In the stipulation, the defendants agreed to amend certain policies and practices to the extent that they did not conform to Kansas Administrative Regulations. On November 21, 1994, the court approved a second Joint Stipulation of Partial Settlement, executed by the plaintiffs, the defendants, the Kansas Department of Social and Rehabilitation Services, and Donna L. Whiteman, Secretary of Social and Rehabilitation Services ("SRS"), which addressed the issue of overcrowding at SCYC. Finally, on July 28, 1995, the court approved a Settlement Agreement and Consent Decree executed by all parties. This third agreement settled all remaining issues in the case as to conditions, policies, and practices at SCYC.

## II. *DISCUSSION*

Section XXIV of the Settlement Agreement and Consent Decree addresses enforcement and monitoring of the decree. Paragraph 1 of the decree designates Bruce Linhos "to monitor and oversee the implementation of the terms of this Consent Decree and/or the plan or plans established to implement the terms of the Consent Decree." Paragraph 1 further provides that the "Board of County Commissioners of Shawnee County [Shawnee County] shall bear the responsibility for payment of all reasonable and necessary costs of the monitoring, pursuant to a schedule or agreement to be approved by the Court." Paragraph 4 of the decree provides as follows: "Any party may raise questions of compliance with this Consent Decree and its implementation plans. Any party's questions of compliance and all individual complaints regarding com-pliance with this Consent Decree must first be presented to the Monitor."

Pursuant to the above provisions of the consent decree, Shawnee County entered into a Contract for Professional Services with Bruce Linhos on August 31, 1995. The paragraph of the contract at issue here, paragraph 6, provides as follows: "The Consultant [Bruce Linhos] agrees to maintain the confidentiality of all documents and information provided to him and may not disclose any of said confidential information other than under the limited conditions permitted pursuant to the Settlement Agreement and Consent Decree entered in the case. *The Consultant will not engage in ex parte communications with counsel for any of the parties regarding matters pertaining to the Settlement Agreement and Consent Decree.* The consultant will not furnish copies of any documents or information provided to him for the parties or their counsel." (emphasis added).

The plaintiffs object to the prohibition on ex parte communications between the monitor and counsel for the parties. The plaintiffs maintain that while the other parties can communicate directly and confidentially with the monitor, it is impossible for a resident to directly contact the monitor without the defendants becoming aware of the contact; consequently, the provision makes it extremely difficult for SCYC residents to raise questions of compliance concerning the consent decree in a manner which preserves the residents' confidentiality. According to the plaintiffs, the most appropriate way for residents to communicate with the monitor in a confidential manner is through their attorneys, and that by forbidding counsel's ex parte communications with the monitor, the defendants are attempting to limit the ability of the monitor to obtain relevant information concerning the defendants' compliance with the consent decree.

The defendants cite two reasons for prohibiting ex parte communications between the monitor and counsel for the parties. First, the defendants assert that the consent decree bestows upon Mr. Linhos the authority to informally resolve questions of compliance and to make findings of fact. Thus, the

monitor serves in the role of a decision-maker. The defendants maintain that when a party is allowed to communicate unilaterally with the decision-maker, the decision-maker's impartiality may be compromised, and the opposing party lacks the opportunity to respond. Second, the defendants contend that the contract provision forbidding ex parte communications between counsel and Mr. Linhos insures that Shawnee County will not have to bear the monetary expense of unlimited contacts between counsel and the monitor. The defendants argue that the consent decree does not impose restrictions on the content of Shawnee County's contract with the monitor, and that they were therefore free to include the prohibition on ex parte communications.

The defendants' argument that the restriction on ex parte communications between counsel and the monitor insures impartiality and the opportunity for all parties to be heard is unconvincing, in that the agreement allows ex parte communications between *parties* and the monitor. As for the defendants' second justification for the provision, whether the limitation on ex parte communications will save the defendants money is not the deciding factor in determining if the provision can stand. The question which the court must answer is whether the provision constitutes an impermissible modification of the underlying consent decree.

The parties submitted to this court their Settlement Agreement and Consent Decree, which we approved and entered on July 28, 1995. The consent decree purported to incorporate the terms of the parties' agreement as to the resolution of all outstanding issues in this litigation. The consent decree specifically provided that it resolved "all matters of issue between the parties with the exception of plaintiffs' claims for attorneys' fees and cost." Among the matters resolved was the enforcement and monitoring of the decree. Section XXIV provides for the designation of a monitor to oversee the implementation of the consent decree, defines the monitor's duties, and describes the parties' relationship with the monitor.

■ The provision in the defendants' contract with Mr. Linhos restricting ex parte communications imposes a condition on communications between the monitor and the

parties. As such, the provision represents an additional term which was not negotiated by the parties, and a modification to the consent decree which was not approved by the court. "[O]ne party to a consent decree cannot unilaterally rewrite the agreement over another party's objections, in order to pursue a course of action favored by it but detrimental to the opposing party, where the course of action is not authorized by the consent decree." *Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023, 1030 (2d Cir. 1993) (citing *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 575–76, 104 S.Ct. 2576, 2586, 81 L.Ed.2d 483 (1984)).

In *Stotts*, the parties entered into a consent decree which established hiring and promotion practices with respect to minorities. 467 U.S. at 565–66, 104 S.Ct. at 2580–81. The district court retained jurisdiction to enter orders necessary or appropriate to effectuate the purpose of the decree, which was to increase the proportion of minority representation in certain job classifications. *Id.* When the defendant later announced layoff plans, the plaintiff sought an injunction under the consent decree which would restrict layoffs of minorities. *Id.* at 566–67, 104 S.Ct. at 2581–82. The consent decree did not specifically prohibit such injunctions. However, because the express terms of the decree did not contemplate a restriction on layoffs, the relief sought by the plaintiff represented a modification of the decree which could not be imposed on the defendant without its consent. *Id.* at 575, 583, 104 S.Ct. at 2586, 2590.

Similarly, the express terms of the consent decree in this case do not contemplate a restriction on ex parte communications between the monitor and counsel for the parties. We therefore hold that the provision in the contract between Shawnee County and Mr. Linhos which forbids ex parte communications between the monitor and counsel for any of the parties is unenforceable as an impermissible modification of the underlying consent decree.

■ Civil contempt, however, is a severe remedy which should be used only when necessary to sustain the authority of the court. *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192, 194 (10th Cir.1970). Furthermore,

a contempt order is warranted only when the movant has shown proof of contempt by clear and convincing evidence. *Heinold Hog Market, Inc. v. McCoy,* 700 F.2d 611, 614 (10th Cir.1983). The movant must establish that the alleged contemnor has not diligently attempted to comply in a reasonable manner with a court order. *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995). Technical or inadvertent violations of a court order do not support a finding of civil contempt. *Universal Motor Oils Co. v. Amoco Oil Co.,* 743 F.Supp. 1484, 1487 (D.Kan.1990). Because the plaintiffs have not demonstrated that an order of contempt might be justified or necessary in this case, we deny the plaintiffs' motion for an order to show cause.

**IT IS BY THE COURT THEREFORE ORDERED** that the plaintiffs' motion for an order requiring the defendants to show cause why they should not be held in contempt for disobedience of the Settlement Agreement and Consent Decree entered by this court on July 28, 1995 (Doc. 144) is denied.

**IT IS FURTHER ORDERED** that the provision in the contract between Shawnee County and Mr. Linhos which forbids ex parte communications between the monitor and counsel for any of the parties is unenforceable as an impermissible modification of the underlying consent decree.

Dated this 16 day of January, 1996, at Topeka, Kansas.