**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 23 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NORMAN LAW, ANDREW GREER,
PETER HERRMANN, MICHAEL
JARVIS, JR.; CHARLES M. RIEB,
DOUG SCHREIBER, LAZARO
COLLOZZO, ROBIN DREIZLER,
FRANK CRUZ and WILLIAM HALL, on
behalf of themselves and all others
similarly situated,

      Plaintiffs-Appellees,

    v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

      Defendant-Appellant.

No. 96-3340

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-2053-KHV)

---

William C. Barnard (Donald C. Biggs, Gayle A. Reindl and Mary T. Doherty, also of
Sommer & Barnard, Indianapolis, Indiana; John J. Kitchin and Linda J. Salfrank of
Swanson, Midgley, Gangwere, Kitchin & McLarney, Kansas City, Missouri, with him on
the briefs) for Defendant-Appellant.

Bonny E. Sweeney (Jan M. Adler and Dennis Stewart, also of Milberg Weiss Bershad
Hynes & Lerach, San Diego, California; W. Dennis Cross and Lori R. Schultz, Morrison
& Hecker, Kansas City, Missouri; Robert G. Wilson of Cotkin & Collins, Los Angeles,
California, with her on the briefs) for Plaintiffs-Appellees.

Before EBEL, LOGAN, and KELLY, Circuit Judges.

LOGAN, Circuit Judge.

Defendant National Collegiate Athletic Association (NCAA) and its attorneys William C. Barnard, Gayle A. Reindl, John J. Kitchin, and Linda J. Salfrank, appeal the district court's imposition of sanctions on them for failure to obey discovery orders in plaintiffs' antitrust actions. The district court has not entered a final judgment,[1] but the NCAA and its counsel assert that the sanctions are immediately appealable as a criminal contempt order. They then argue that the district court imposed the criminal contempt

---

[1] The district court granted summary judgment to plaintiffs on liability on May 24, 1995, ruling that the NCAA violated § 1 of the Sherman Act. On January 8, 1996, the district court granted a permanent injunction against the NCAA enjoining it from enforcing compensation limits against the named plaintiffs, who are "restricted earning coaches." The NCAA appealed that injunction in case number 96-3034. In a separate opinion issued this day this panel has affirmed the district court's order granting that injunction. See Law v. NCAA, No. 96-3034 (10th Cir. Jan. 23, 1998). Because the issue of damages is still pending the district court has not entered a final order in the cases.

The district court also entered several other orders regarding interim attorneys' fees which are the subject of separate appeals in which we issue opinions this day. See Law v. NCAA, Nos. 96-3150, 96-3186, 96-3200 (10th Cir. Jan. 23, 1998).

sanctions without affording the NCAA and its counsel the required procedural protections and adequate notice that discovery sanctions might be imposed against them.[2]

## I

The sanctions order arose out of a discovery dispute over plaintiffs' attempts to obtain damages information and identify additional plaintiffs. Plaintiffs' third set of interrogatories sought information about the salaries and employment benefits that each of the Division I[3] member schools provided to coaches in every sport from 1985-1996. The NCAA sought a protective order on the basis that it had no obligation to collect this data; but the district court denied its motion. The court ordered the NCAA to send a survey to its members, but a dispute arose over the contents of a cover letter to that survey. Ultimately the district court ordered the NCAA to answer the interrogatories by February 26. Asserting that the NCAA did not meet the deadline, plaintiffs moved for discovery sanctions. The district court issued a show cause order, and after a hearing granted plaintiffs' motion and imposed sanctions against both the NCAA and its counsel. The district court order of May 29, 1996, directed Division I NCAA members to answer

---

[2] Alternatively, the NCAA and its counsel contend that the sanctions must fall because the underlying discovery order was based on an erroneous finding that the information sought by plaintiffs' third interrogatories was "available" to the NCAA within the meaning of Fed. R. Crim. P. 33(a). Because we do not reach the issue of whether the underlying discovery order was erroneous we do not address this argument.

[3] Although the third set of interrogatories to defendant requested this information for Division II schools as well, plaintiffs later limited the request to Division I schools.

plaintiffs' interrogatories, and publicly censured and imposed monetary sanctions on the NCAA and its counsel.

The NCAA filed for a writ of mandamus from this court which we denied.[4] Later, however, we granted to state college and university Division I member schools a writ of prohibition, vacating the portion of the district court's order directing them to answer the interrogatories. University of Texas at Austin v. Vratil, 96 F.3d 1337 (10th Cir. 1996).

Thereafter the district court vacated its May 29 order and reconsidered plaintiffs' motion for sanctions. The district court rejected the NCAA's argument that the information requested in the interrogatories was not "available" under Fed. R. Civ. P. 33. The court publicly censured the NCAA and its counsel and ordered both "to pay the reasonable expenses and attorneys' fees which plaintiffs incurred on account of their failure to permit discovery, plus a 25 percent surcharge." Appellant's App. 633. The district court further ordered that NCAA and its counsel pay "all expenses and attorneys' fees which plaintiffs reasonably incur in the process of deposing Division I members of the NCAA on the issue of damages," including a "25 percent surcharge." Id. The NCAA

---

   [4] We concluded that the NCAA had an adequate remedy at law because it could appeal the sanctions after entry of final judgment, the monetary amount of sanctions did not impose irreparable injury to the NCAA, and no alleged abuse of discretion by the district court amounted to judicial usurpation of power. NCAA v. Vratil, No. 96-3208 (10th Cir. June 27, 1996).

and its counsel appeal only the portion of that order directing them to pay fees and costs plus twenty-five percent for their failure to permit discovery.[5]

II

We first address whether we have jurisdiction over this appeal. Sanctions, even if issued as civil contempt orders, generally are not deemed final appealable orders under 28 U.S.C. § 1291. See G.J.B. & Assocs., Inc. v. Singleton, 913 F.2d 824, 827-29 (10th Cir. 1990) (counsel of record may not file interlocutory appeal for imposition of sanctions); D&H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443, 1445-46 (10th Cir. 1984) (parties may not file interlocutory appeal from imposition of sanctions); see also Consumers Gas & Oil, Inc., v. Farmland Indus., Inc., 84 F.3d 367, 370 (10th Cir. 1996) (party to a pending proceeding may appeal civil contempt order only as part of appeal from final judgment). Criminal contempt orders, however, are deemed final orders that are immediately appealable. Id. The NCAA and its counsel assert that although the district court's order did not expressly hold the NCAA and its counsel in contempt, it

---

[5] Although the full amount of the discovery sanctions has not been set, see Turnbull v. Wilcken, 893 F.2d 256, 258 (10th Cir. 1990) (appeal from imposition of sanctions may not be taken until amount has been determined), this does not present a jurisdictional problem in addition to that discussed hereafter. Defendant asserts that it paid plaintiffs over $48,000 after the May 29 order, and plaintiffs have not challenged this assertion. Defendant and counsel state they will appeal that portion of the order directing them to pay for attorneys' fees and expenses incurred by plaintiffs in deposing NCAA Division I members when the district court sets an amount.

found that they acted in contempt of court. They further argue the court imposed criminal contempt sanctions and thus we have jurisdiction.

The order at issue followed a show cause hearing on plaintiffs' motion for sanctions under Fed. R. Civ. P. 37 (b)(2).[6] The court found that the NCAA "affirmatively encouraged its members to <u>withhold</u> information for the purpose of defeating plaintiffs' legitimate interrogatories," Appellant's App. 626, and that such conduct was "wilful, in bad faith, and expressly calculated to frustrate the Court's orders with respect to

---

[6] The motion requested sanctions for failing to obey an order to provide discovery, and specifically requested:

    1. striking defendant's opposition to plaintiffs' motions for class certification and certifying the plaintiff classes; and

    2. striking defendant's answers and rendering final default judgments against defendant in each of these cases in amounts to be proven up by plaintiffs at a hearing to be held for that purpose.

    Alternatively, plaintiffs seek an order:

    1. allowing plaintiffs to prove class-wide damages by means of sampling and averaging techniques and precluding defendant from offering expert testimony on the issue of damages or otherwise contesting such techniques or the sufficiency of the data used by plaintiffs in calculating damages; and

    2. requiring defendant to pay (a) the attorneys' fees and expenses incurred by plaintiffs to date in attempting to obtain information responsive to Plaintiffs' Third Set of Interrogatories, and (b) all future attorneys' fees and expenses incurred by plaintiffs in obtaining such information from NCAA members, to be paid as they are incurred.

Appellant's App. 251.

discovery." Id.; see also id. at 597. The district court stated that "Rule 37(b)(2) provides that if a party fails to obey an order to provide discovery under Rule 37(a), the Court 'may make such orders in regard to the failure as are just . . . .' Rule 37(b)(2) sets forth possible sanctions, including orders that certain facts be taken as established or evidence excluded, that claims or defenses be unopposed or pleadings struck, that reasonable expenses caused by the recalcitrant party be paid, and that the party be held in contempt." Appellant's App. 627. The court then "publicly censured" the NCAA and its counsel and ordered them to pay 125% of the expenses and attorneys' fees incurred in making the motion. Id. at 629-30. The district court reasoned:

> A monetary award is also necessary to reimburse plaintiffs the expenses and attorneys' fees which they incurred in making the subject motion to compel. An unenhanced order for compensation would be remedial, and no circumstances of record would render such an award unjust. Such an order would have no meaningful deterrent effect, however, for the NCAA, its counsel or others. As noted elsewhere in this opinion, the NCAA is already subject to liability for payment of all costs and fees which plaintiffs have incurred and will incur on account of the NCAA's established violation of federal antitrust law. The Court finds that a 25 percent surcharge is a reasonable sanction and that it is the least severe penalty that will serve to deter future misconduct.

Id. at 630.[7]

---

[7] The district court apparently overlooked the possibility that its finding of an antitrust violation might be reversed on appeal. In that event plaintiffs would not be entitled to attorneys' fees as a prevailing party. But defendant and its counsel still would have to pay a properly levied discovery sanction, which could include plaintiffs' attorneys' fees incurred in pursuing the motion to compel.

The district court clearly intended to impose the sanctions under Rule 37. The language ordering payment of "the reasonable expenses and attorneys' fees which plaintiffs incurred on account of their failure to permit discovery," Appellant's App. 633, tracks the language of the final paragraph of Rule 37(b)(2). This leaves the question of the basis for the twenty-five percent surcharge ordered paid to plaintiffs. The NCAA and its counsel assert that the only monetary sanctions authorized by Rule 37(b)(2), absent contempt, are the compensatory sanctions authorized by its final paragraph. Because the twenty-five percent is not compensatory, they argue that the court must have imposed that sanction based on a contempt finding under Rule 37(b)(2)(D). Plaintiffs counter that a noncompensatory monetary sanction is authorized under the provision that the court "may make such orders in regard to the failure [to comply with discovery orders] as are just." Fed. R. Civ. P. 37(b)(2).

The Second Circuit noted that "[t]here is a split in authority on the question whether a district court can order non-compensatory sanctions under Rule 37 without a finding of contempt." Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp., 101 F.3d 3, 5 (2d Cir. 1996). The Fourth Circuit has held "that a Rule 37 fine is effectively a criminal contempt sanction, requiring notice and the opportunity to be heard." Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 42 (4th Cir. 1995) (Rule 37 sanction of $5,000 imposed without prior notice or hearing was effectively criminal contempt sanction) (citing Buffington v. Baltimore County, 913 F.2d 113, 133-35 (4th

Cir. 1990)).  Similarly, the Third Circuit has held that "[a]bsent contempt, the only monetary sanctions Rule 37 authorizes are 'reasonable expenses' resulting from the failure to comply with discovery."  Martin v. Brown, 63 F.3d 1252, 1263 (3d Cir. 1995). Several district courts, however, have imposed a fine under Rule 37 without making a finding of contempt.  See, e.g., Pereira v. Narragansett Fishing Corp., 135 F.R.D. 24, 26-28 (D. Mass. 1991) (finding that under Rule 37(b)(2) it could impose a monetary sanction "over and above an award of the opposing party's costs and attorney's fees" without a finding of contempt); J. M. Cleminshaw Co. v. City of Norwich, 93 F.R.D. 338, 355-57 (D. Conn. 1981).  This position is bolstered by the First Circuit's opinion in Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1241-42 (1st Cir. 1991), which held that under the Fed. R. Civ. P. 16(f) language that a court "may make such orders . . . as are just" a district court may impose punitive monetary sanctions, seemingly without a finding of contempt.

Federal courts, of course, have power to impose sanctions and adjudicate contempt against parties and counsel on bases other than Rule 37.  See Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980).  We need not attempt to distinguish between a sanction order that is not civil contempt and one that is civil contempt.  If the district court's interlocutory sanction order is properly classified as civil, we have no jurisdiction to review whether it was appropriate.  Conversely, if it is criminal contempt it is appealable.

The distinction between criminal and civil contempt is important because "[c]riminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 826 (1994) (quotations and citation omitted). Succinctly, "[c]ivil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). The NCAA and its counsel argue that the district court's order constitutes criminal contempt because the twenty-five percent surcharge is a fine. We agree it is a fine even though the court ordered it paid to plaintiffs, not to the court.

> United States v. United Mine Workers of America, 330 U.S. 258 (1947), states:
>
> Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.

Id. at 303-04 (citation and footnotes omitted). Plaintiffs rely upon the statement in Hicks v. Feiock, 485 U.S. 624, 632 (1988): "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court." Despite the

- 10 -

generalization in <u>Hicks</u> we believe the district court could not make a noncompensatory fine civil simply by requiring it to be paid to the complainant instead of to the court.

Plaintiff also cites the following statement from <u>Bagwell</u>:

Certain indirect contempts nevertheless are appropriate for imposition through civil proceedings.  Contempts such as <u>failure to comply with document discovery,</u> for example, while occurring outside the court's presence, impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power.  Courts traditionally have broad authority through means other than contempt--such as by striking pleadings, assessing costs, excluding evidence, and entering default judgment--to penalize a party's failure to comply with the rules of conduct governing the litigation process.  See, <u>e.g.</u>, Fed. Rules Civ. Proc. 11, 37.  Such judicial sanctions never have been considered criminal, and the imposition of <u>civil, coercive fines</u> to police the litigation process appears consistent with this authority.

512 U.S. at 833 (emphasis added).  The <u>Bagwell</u> Court held that fines ordered paid to complainants and to the state and counties damaged by unlawful activities were criminal.

A civil fine is by definition either compensatory or coercive.  The Supreme Court has made this plain.  A fine payable to a complainant "must of course be based upon evidence of complainant's actual loss."  <u>United Mine Workers</u>, 330 U.S. at 304.  The offending party is punished, but a critical feature of civil contempt is that "the punishment is remedial."  <u>Hicks</u>, 485 U.S. at 631 (quoting <u>Gompers v. Bucks Stove & Range Co.</u>, 221 U.S. 418, 441 (1911)).  "A fine payable to the complaining party and proportioned to the complainant's loss is compensatory and civil."  <u>Hicks</u>, 485 U.S. at 646-47.  One reason given by the Supreme Court in <u>Bagwell</u> for finding a fine criminal was that no one "suggested that the challenged fines are compensatory."  512 U.S. at 834; <u>see also</u> <u>Yanish</u>

- 11 -

v. Barber, 232 F.2d 939, 944 (9th Cir. 1956) (civil fine cannot exceed actual loss to complainant).

Courts have upheld as civil fines intended to coerce, as long as the offending party can avoid them by complying with the court's order. See Hicks, 485 U.S. at 632 (fine payable to the court itself may be remedial "when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order"); NLRB v. Local 825, Int'l Union of Operating Eng'rs, 430 F.2d 1225, 1229-30 (3d Cir. 1970).[8]

In the instant case the twenty-five percent surcharge above plaintiffs' actual costs was neither compensatory nor, as to the portion of the order appealed here, avoidable by complying with the court's order. Thus it was criminal. When an order is partially civil and partially criminal, the criminal aspect controls for purposes of review. See Hicks, 485 U.S. at 638 n.10; Lamar Fin. Corp. v. Adams, 918 F.2d 564 (5th Cir. 1990). We therefore have jurisdiction to review the portion of the district court's order appealed here.

III

---

[8] Even coercive fines that may be avoided by obeying the court's orders may be considered criminal if the sanctionable conduct did not occur in the court's presence and elaborate fact finding is required. See Bagwell, 512 U.S. 821; Hostak, International Union, United Mine Workers v. Bagwell, A Paradigm Shift in the Distinction Between Civil and Criminal Contempt, 81 Cornell L. Rev. 181 (1995).

The NCAA and its counsel argue that they did not receive the required procedural safeguards for a criminal contempt order.

> [T]his Court has found that defendants in criminal contempt proceedings must be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves; must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses; must be given a public trial before an unbiased judge; and must be afforded a jury trial for serious contempts.

Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798-99 (1987). "A criminal contempt . . . shall be prosecuted on notice . . . [which shall] state . . . the essential facts constituting the criminal contempt charged and describe it as such." Fed. R. Crim. P. 42(b).

Neither the motion for sanctions nor the show cause order included notice that the NCAA and its attorneys were subject to a criminal contempt charge. Plaintiffs' motion for sanctions did not request monetary sanctions above the reasonable "attorneys' fees and expenses" set out in the last paragraph of Rule 37(b)(2). The district court's show cause order, while it did include the possibility that attorneys Barnard and Reindl might be denied their admission pro hac vice, or that Fed. R. Civ. P. 11 sanctions might be imposed on counsel, did not specifically name attorneys Kitchin and Salfrank. Because neither the NCAA nor its counsel had adequate notice that they might be held in criminal contempt and liable for noncompensatory monetary sanctions, and were not afforded the

process required for criminal contempt, we must reverse the district court's sanctions order.

REVERSED and REMANDED.