**BRAINTREE LABORATORIES, INC., Plaintiff,**

v.

**NEPHRO–TECH, INC. and G.P. Georges III, Defendants.**

**No. 96–2459–JWL.**

United States District Court, D. Kansas.

May 16, 2000.

---

Craig T. Kenworthy, Swanson Midgley, LLC, Kansas City, MO, Arthur A. Smith, Jr., Boston, MA, Allen Slater Olathe, KS, Thomas D. Heteleff, Prescott M. Lassman, Kleinfeld, Kaplan and Becker, Washington, DC, for Plaintiff.

Mark E. Brown, Marcia J. Rodgers, Litman, Kraai & Brown, LLC, Kansas City, MO, Steven H. Mustoe, Eric C. Carter, Kurlbaum Stoll Seaman & Mustoe, P.C., Kansas City, MO, for Defendants.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

Plaintiff Braintree Laboratories, Inc., the assignee of United States Patent No. 4,870,105, (hereafter '105 patent) brought this patent infringement action against defendants Nephro–Tech, Inc. and G.P. Georges III, alleging that defendants' mar-

keting and distribution of their calcium acetate product infringes the '105 patent. A jury trial in this matter was held before this court between September 28, 1999 and October 7, 1999. On October 7, 1999, the jury returned a verdict in favor of plaintiff, finding the '105 patent valid and infringed, and awarding damages in the amount of $300,000. After considering the parties' respective post-trial motions, the court denied defendants' motion for judgment as a matter of law, and granted in part plaintiff's motion to alter or amend the judgment. *See Braintree Labs., Inc. v. Nephro–Tech, Inc.*, 81 F.Supp.2d 1122 (D.Kan. 2000). Presently before the court is plaintiff's motion for an order to show cause why defendants should not be held in contempt for failure to comply with the injunction provision of the court's judgment (doc. 168). For the reasons set forth below, plaintiff's motion is denied.

## I. Standard

The primary purpose of a civil[1] contempt sanction is "to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir.1998) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949)). A party seeking a contempt order bears the burden to establish, by clear and convincing evidence, that "a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir.1998).

To the extent that the order alleged to have been violated is ambiguous or otherwise unclear, "[a]ny ambiguities or omissions in the order will be construed in favor of [the person charged with violating the order]." *Id.* "A defendant may be absolved from a finding of civil contempt if the defendant is able to show that it complied with a reasonable interpretation of the stipulation and order and if the defendant's action appears to be based on a good faith and reasonable interpretation of the order." *Spectra Sonics Aviation, Inc. v. Ogden City*, 931 F.2d 63 (table), 1991 WL 59369, at 2 (10th Cir.1991) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949)); *Entech Sys., Inc. v. Bhaskar*, 72 F.Supp.2d 1272, 1276 (D.Kan.1999). Moreover, "if the defendant takes all reasonable steps and substantially complies with the court order," a finding of civil contempt may be avoided. *Spectra Sonics*, 1991 WL 59369, at 2 (citing *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986)); *Bhaskar*, 72 F.Supp.2d at 1276.

Where the movant establishes a prima facie case of civil contempt, the district court nevertheless retains broad discretion in determining whether to exercise its authority to hold a party in contempt. *Id.; see also United Intern. Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1236–37 (10th Cir.2000) (citing *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir.1992) ("A district court has broad discretion in using its contempt power to require adherence to court orders")). Finally, the court notes that "[c]ivil contempt is an appropriate remedy for the enforcement of a judicial decree, but it is a severe one which should be used only when necessary to sustain the authority of the court." *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192,

---

1. Unlike civil contempt where the objective is to compel compliance with a court order, "[t]he primary purpose of a criminal contempt is to punish defiance of a court's judicial authority." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 499–500 (10th Cir.1980). Although in its opening brief plaintiff does not specifically state whether it is pursuing civil, versus criminal, contempt here, because in its reply brief plaintiff refers only to civil contempt, the court considers plaintiff's motion in light of the standards governing civil contempt.

194 (10th Cir.1970); *T.Y. v. Board of County Comm'rs of County of Shawnee*, 912 F.Supp. 1424, 1427 (D.Kan.1996).

## II. Discussion

Although defendants continued to sell their Calphron product during trial, defendants explain that, in an effort to avoid any further litigation with regard to the sale of Calphron, they have elected to stop selling the product altogether. Thus, according to defendants, the last sale of Calphron occurred on January 3, 2000, four days before this court denied defendants' posttrial motion and granted plaintiff's request for injunctive relief. Additionally, although not required to do so by any order issued by this court, defendants state that they have advised the National Databank, which, according to the defendants, is "an organization that provides product information to wholesalers, pharmacies and state Medicaid payors," that Calphron is no longer available for sale. Def.Mem. in Opp. at 1.

### A. State Agencies

### 1. Any State Agency Which Could Possibly Reimburse for Calphron

Plaintiff contends that the injunction entered by the court on January 7, 2000 requires defendants to alert "any state agency which could pay reimbursement for Calphron, not just agencies which have paid reimbursement previously." Def. Repl. at 3. Defendants, on the other hand, maintain that the injunction directs defendants to send notices only to state agencies from which it had in the past received, or was currently receiving, Medicaid reimbursement for their Calphron product. The disputed language of the injunction reads as follows:

**IT IS FURTHER ORDERED THAT** the defendants, Nephro–Tech, Inc., and G.P. Georges III, send written notice of this injunction, by a copy thereof, to all of their present and past customers, distributors, wholesalers, warehousers, dialysis clinics, doctors, and other health care providers in the nephrology community, *and all agencies or entities making payment for reimbursement for any purchase, of the product Calphron.*

*Braintree*, 81 F.Supp.2d. at 1141 (emphasis added).

■ The court believes that the language of the injunction is subject to the reading advanced by defendants, and thus the court concludes that it was reasonable for defendants to send notice only to those states which had in the past made, or were currently in the process of making, reimbursement payments for Calphron. Consequently, with respect to the state agencies which had never reimbursed defendants for Calphron, the court concludes that plaintiff has failed to meet its burden to prove that the defendants should be held in civil contempt for failure to comply with an order issued by this court.

### 2. Nine Additional State Agencies

In the event that the court accepts defendants' interpretation of the injunction, and thus determines that defendants civil contempt sanctions are not warranted on the ground that defendants failed to send notices to any state agency which could possibly reimburse defendants for Calphron, Braintree asserts that nine additional state Medicaid agencies, including Virginia, should have been notified of the existing injunction under defendants' interpretation of the court's order. Braintree therefore claims that defendants should be required to explain why such notice was not previously sent. In response, defendants state that "Nephro–Tech agreed to and has sent notice to nine (9) other states, even though those states have never been third party payors and would not be covered by the order." Def.Mem. in Opp. at 3, ¶ 5. Based on defendants' representation, then, the court assumes that defendants have, at least at the time that they submitted their response to plaintiff's mo-

tion, notified Virginia.[2]

▮ The court notes that, despite plaintiff's assertion to the contrary, it is entirely unclear from the record before the court whether Virginia has in the past reimbursed, or is currently reimbursing, defendants for Calphron. Instead, although it appears from Mr. Georges' deposition testimony that Virginia had *agreed* to reimburse defendants for Calphron sales, no evidence has been offered by plaintiff to support its contention that Virginia had *in fact* reimbursed defendants for Calphron sales. As a result, the court cannot simply conclude from the facts before it that Virginia indisputably falls within what the court believes is defendants' reasonable reading of the injunction entered against them on January 7, 2000. Thus, because the record indicates that notice has in fact been sent to Virginia, and also because it appears that any such notice may not have been required under defendants' interpretation of the injunction, the court does not believe that plaintiff has met its burden to establish, by clear and convincing evidence, that defendants are guilty of civil contempt, at least insofar as plaintiff's allegations relating to defendants' alleged failure to notify Virginia, or the additional eight state agencies to which defendants agreed to send notice, are concerned. Plaintiff's motion with respect to this issue is, therefore, denied.

## B. Three Omitted Customers

▮ In their papers, defendants maintain that they have complied with this court's order "by sending notice and a copy of the injunction to all of its past customers, distributors, wholesalers, pharmacies, warehousers, certain dialysis clinics and state medicaid agencies." Def. Mem. in Opp. at 6. In the "facts" section of their brief, it appears that defendants first sent a batch of notices to certain customers, and then subsequently sent three additional notices to F. Dohmen Co., Westminster Dialysis, and Michelle Reardon. While the court agrees with plaintiff that defendants have offered no explanation as to why those three persons/entities, all apparent purchasers of Calphron since the close of trial, were not included in the original dispatch of customer notices, the court is not persuaded that such an omission warrants a finding of contempt. Accordingly, the court declines to exercise its discretion to hold defendants in contempt on the basis of their apparently belated notification of F. Dohmen Co., Westminster Dialysis, and Michelle Reardon.

## C. Failure to Send Notice to Entities Found on Braintree–Generated List

Braintree contends that defendants should be held in contempt for failing to send notices to some seventy-five kidney dialysis clinics specified in a list generated by Braintree on the basis of documents produced during the course of this litigation. In response, defendants steadfastly maintain that they have complied with the court's injunction order by sending notice

---

2. Although neither party specifically identifies which states plaintiff claims were omitted from defendants' first round of injunction notices, attached to plaintiff's opening brief is a document entitled "Medicaid Coverage of Calphron" in which nine states, which, according to that document, were determined by the author of that document to have been omitted from the list provided by defendants' counsel. The document is not itself marked as a separate exhibit, and does not appear to be connected to the preceding exhibit, marked as Exhibit 8, which is a letter directed to defendants' counsel from plaintiff's counsel. In any event, included in that list of nine states which were, according to the document's text, apparently omitted from defendants' counsel's notification list is Virginia. Because this is the only document listing nine states, the court infers that these are the nine additional states to which defendants agreed to send, and have now apparently sent, notice of the injunction. Because Virginia is included amongst the states on that list, it appears from the record that defendants have notified Virginia of the existence of the injunction, at least when they dispatched the second round of notices directed toward state agencies per plaintiff's request.

to all interested persons and entities, and that they should not be required to send further notice to the approximately seventy-five dialysis clinics listed by the plaintiff because it is unclear how that list was generated. More specifically, defendants contend that, because their customer base is mostly comprised of warehousers, wholesalers, and distributors, Calphron is not ordinarily directly marketed to kidney dialysis centers. Thus, while the clinics found on Braintree's list may in fact dispense Calphron to their patients, because it is virtually impossible for Calphron to identify end-users who receive their supply of Calphron via defendants' wholesaler/warehouser/distributor customers, while defendants are certainly willing to send notice to those clinics covered by the injunction, defendants first wish Braintree to clarify how it determined which clinics would appear on its list so that defendants can assess whether notice is truly required under the terms of the injunction.

With the exception of its explanation that the list was created from information garnered during the course of this lawsuit, plaintiff fails to identify the documents from which it was prepared, or otherwise account for its conclusion that such clinics are due notice per the terms of the injunction. Instead, the record merely suggests that the clinics listed by Braintree apparently *use* Calphron. There is no evidence, however, that the clinics are actual customers of defendants, and thus it is possible that these clinics, even if using Calphron, may not fall within the scope of the injunction.

 In the absence of such information, the court is simply unable to determine whether the clinics to which Braintree urges notice must be sent fall within the scope of the injunction. Based on defendants' representations to this court that they have sent notices to all relevant persons and/or business entities as required by the terms of the injunction entered against them, and further because plaintiff has failed to prove by clear and convincing evidence that defendants' failure to send notices to the seventy-five clinics listed by Braintree are covered by the injunction, the court is not persuaded that defendants should be held in civil contempt on this basis. Accordingly, plaintiff's motion as it relates to defendants' alleged failure to notify those particular clinics is denied.

## D. Alleged Defects in Defendants' "First Round" of Notices

 Although plaintiff mentions in its opening brief that a "spot check" of the persons and entities listed by defendants as having been notified pursuant to the court's order revealed that certain of those persons/entities had not yet received notice, the spot checks were apparently conducted on March 10 and 11, 2000. Because plaintiff does not address the matter in its reply brief, and further because defendants maintain that all required notices have indeed been sent, the record is unclear as to whether the notices simply had not arrived to the intended recipients' addresses as of March 10 or 11 but have now been received, or if the notices are still outstanding as of the date of this order. In the absence of any evidence regarding the current state of those notices, the court cannot speculate that the parties represented by defendants as having been sent notice have still not received notice. Consequently, the court cannot conclusively determine whether or not defendants' obligation with respect to those customers has been fulfilled. In light of the dearth of evidence as it relates to the results of plaintiff's limited inspection of the parties to whom notice was allegedly dispatched, the court does not deem a civil contempt appropriate under the circumstances of this case.

## E. Alleged Misstatement to the Court During March 9, 2000 Teleconference

On March 9, 2000, the court held a conference with counsel by telephone on

the issue of the defendants' request to post a letter of credit in lieu of a supersedeas bond to stay execution of the judgment in this case. During that teleconference, counsel for defendants stated that the notices, as required by the court's entry of the injunction against defendants, had already been sent out by the defendants. Despite this assertion to the court, it appears from the record currently before the court that notices to the relevant state agencies were not actually posted until several hours after the telephone conference occurred. In light of this evidence, plaintiff alleges that, because the notices sent to state agencies were not sent until after the parties' discussion with the court took place on March 9, 2000, defendants should be held in civil contempt for misrepresenting to the court that the required notices had previously issued.

■ In their papers, defendants do not offer a clear explanation why they failed to tell the court that while certain notices had been sent as of the time of the teleconference, the notices to state agencies had not. On the other hand, there is absolutely no evidence in the record here to suggest that the statement was calculated to purposefully mislead this court. Indeed, it is just as likely that defendants' counsel was merely mistaken in his belief that all notices had been sent as of the time that the telephone conference was convened. As a result, the court does not find that plaintiff has sustained its burden to prove that defense counsel's apparent misstatement to the court during the March 9, 2000 telephone hearing constitutes an action justifying a finding of civil contempt, and therefore declines to exercise its discretion to hold defendants in contempt on this basis. Thus, plaintiff's motion as it relates to defendants' counsel's alleged misstatement to the court is denied.

## III. Conclusion

■ In short, the court concludes that plaintiff has failed to meet its burden to prove that a civil contempt sanction is warranted in this case. Even so, the court does not by its order intend to suggest that defendants' attempts to comply with the injunction entered against them in this case constitute an example for others to emulate. Indeed, it is quite clear from the record that defendants' efforts to comply with the order were somewhat less than diligent, and often marked by careless mistakes.[3] Nevertheless, the court is not persuaded that plaintiff's reference to the unexplained errors committed by defendants in complying with the order, even when considered in light of the somewhat nonchalant approach defendants seem to have taken to satisfying the terms of the injunction, fulfills plaintiff's burden to establish, by clear and convincing evidence, that defendants' conduct warrants a find-

---

3. The court notes that, in the flurry of correspondence that was exchanged between plaintiff's and defendants' counsel prior to the filing of plaintiff's motion, defense counsel stated that he believed that the court's entry of a stay of execution of the judgment somehow also stayed the operation of the injunction, such that defendants were not required to abide by the terms of the injunction pending appeal. As countered by plaintiff and as is now admitted by defendants, if defendants desired to avoid the requirements of the injunction during the prosecution of their appeal, defendants were required to seek a separate stay of the injunction in addition to the stay of execution of the judgment. *See generally* 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2905 (2d ed. 1995) ("If a judgment includes both a money award and the grant or denial of an injunction, a supersedeas stays the money award but not that part of the judgment that deals with injunctive relief.")

In its papers, plaintiff repeatedly emphasizes defense counsel's above-mentioned misinterpretation of the law, apparently presuming that it is relevant to the issue of defendants' alleged non-compliance and suggesting that it "underscores the need for an Order to Show Cause." Pl.Repl. at 4. While the court certainly agrees that defense counsel should in the future research the relevant law to avoid launching empty threats and appearing foolish to the court and opposing counsel, the court does not find that defense counsel's erroneous reading of the law mandates the issuance of an order to show cause in this case.

ing of civil contempt. The court does, indeed, view contempt as a severe remedy and it does not believe there has been a showing here of conduct which makes contempt necessary to sustain the court's authority. The court trusts that defendants' compliance with the court's orders will, henceforth, be full and complete. Accordingly, and for all the reasons set forth above, plaintiff's motion for an order to show cause why the defendants should not be held in contempt is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for an order to show cause why defendants should not be held in contempt for failure to comply with the injunction provision of the court's judgment (doc. 168) is **DENIED.**