Helen D. WOODSON, et al., Plaintiffs,

v.

Leroy GREEN, Jr., Sheriff of Wyandotte County, Kansas and his agents, subordinates, and employees

and

The Unified Government of Wyandotte County/Kansas City, Kansas, Defendants.

No. 85–3049–DES.

United States District Court, D. Kansas.

Feb. 26, 2002.

Anthony F. Rupp, Amy E. Morgan, Shughart, Thomson & Kilroy, Overland Park, KS, for Plaintiffs.

Steven A.J. Bukaty, Sean P. McCauley, Overland Park, KS, Paul E. Serrano, Jr., Kansis City, MO, Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansis City, KS, for Defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant Unified Government of Wyandotte County/Kansas City, Kansas' ("Unified Government") Motion for Contempt (Doc. 237). The motion asserts the court should find Defendant Leroy Green, Jr. ("Sheriff") in contempt of this court's previous order. The Sheriff has filed a response entitled Memorandum Brief in Opposition to Motion for Contempt (Doc. 245), and the Unified Government has filed a Reply (Doc. 247).

On July 12, 2001, the court held a hearing on the Unified Government's motion. Before the court could render a decision, however, the parties requested the court to refrain from ruling on the motion while they actively pursued an agreed resolution. In response, on October 26, 2001, the court entered an Order (Doc. 248) delaying these proceedings till further notice. On January 15, 2002, the court held a telephonic status conference with the parties. As instructed by the court, the parties have recently informed the court that their negotiations have reached an impasse. After reviewing the parties' filings and considering the oral arguments of counsel, the court is now prepared to rule. For the following reasons, the Unified Government's motion shall be denied.

## I. BACKGROUND

### A. Procedural History

The history of this case is well known to the court and the parties, so a full accounting of the litigation is unnecessary to resolve the presently pending matter.

This action was originally filed by the plaintiffs in 1985. The plaintiffs, who at the time were inmates of the Wyandotte County Jail ("jail"), brought suit challenging the constitutionality of the conditions of their confinement. A Consent Judgment and Decree (Doc. 95) was entered on March 30, 1987, securing through permanent injunction the constitutional operation of the jail. The original consent judgment also created the entity now at issue: the Jail Population Control Committee ("Committee").

After construction of a new jail, which became operational in 1989, the court, in a Memorandum and Order (Doc. 159) dated September 8, 1992, found that the jail was

not operating in compliance with the consent judgment. In its Memorandum and Order, the court denied the Unified Government[1] and plaintiffs' request to remove operational control of the jail from the Sheriff.[2] On October 27, 1992, the court issued an Order of Reference (Doc. 163), which appointed a Special Master to monitor defendants' compliance with the original consent judgment. Finally, on August 19, 1994, the court issued an Order (Doc. 197) terminating the Order of Reference and entered final judgment in the case. In its final Order, the court found the defendants were complying with the original consent judgment. This final Order also created the position of Jail Administrator.

On December 6, 2000, the Unified Government filed a Motion to Reopen (Doc. 202) the case for the limited purpose of seeking temporary orders requiring the Sheriff to comply with the original consent judgment and final order and a modification of the original consent judgment and final order. In sum, the Unified Government was seeking two remedies: first, it wanted two of the jail's "pods" closed to alleviate staffing shortages; and second, it renewed its request to ultimately remove the Sheriff from operational control of the jail.

On December 20, 2000, the court was prepared to hold a hearing on the Unified Government's motion to reopen. Before the hearing could begin, however, the parties represented to the court their desire to negotiate an agreement regarding a temporary order. The court dismissed the parties to an anteroom. Several hours later, the parties returned to the court with an agreement in hand. This agreement was embodied in the Order (Doc. 226) issued by the court on January 8, 2001. The Order resolved the most pressing issue, namely the closure of the two pods. However, the Order reserved any decision regarding the ultimate issue of the case, namely modifying the original consent decree by removing operational control of the jail from the Sheriff, for later resolution.

The Unified Government comes now before the court alleging the Sheriff has failed to comply with the January 8, 2001, order, and requests the court find the Sheriff in contempt.

### B. Factual History

The Unified Government's present assertion is exclusively focused on the power play between the Sheriff, the Committee, and Jail Administrator, J.B. Hopkins. To understand this issue, therefore, requires a brief discussion of this contemptuous triangle.

It is undisputed that prior to the court's January 8, 2001, Order, Mr. Hopkins, acting as Jail Administrator, was directly accountable to the Sheriff. The current interplay of these two positions is at the heart of the current controversy. While the Sheriff is responsible for the jail, the administrator is to serve as a professional manager within the jail's staff.

The Committee has seven members: the 29th Judicial District Administrative Judge; the District Attorney for the 29th Judicial District; the Court Administrator

---

**1.** Wyandotte County, Kansas, and the City of Kansas City, Kansas, were consolidated into the Unified Government in 1997. All liabilities and responsibilities of the County were assumed by the Unified Government. In an Order (Doc. 204) dated December 8, 2000, the court substituted the Unified Government

for the Board of County Commissioners of the County of Wyandotte.

**2.** In September 1992, the Sheriff of Wyandotte County was Owen L. Sully. In its December 8, 2000 Order, the court substituted the current sheriff, Leroy Green Jr., for Mr. Sully.

for the 29th Judicial District; a Wyandotte County Commissioner; the Wyandotte County Counselor; a Municipal Judge from the City of Kansas City, Kansas; and the Wyandotte County Sheriff. The Sheriff is, therefore, a voting member of the Committee. Again, the relationship between the Committee, the Sheriff, and/or the Jail Administrator is highly contested.

On April 2, 2001, the Sheriff suspended, with pay, Mr. Hopkins, yet, later that same day, the Committee voted to reinstate Mr. Hopkins. In response to the Committee's decision, on April 3, 2001, the Sheriff sent Mr. Hopkins a memorandum ordering him to restrict his physical presence within the jail and advising him not to interfere with the operations of the jail. Confronted with the Sheriff's dictate, Mr. Hopkins decided to take personal leave for the remainder of the week. Thereafter, on April 10, 2001, the Committee convened a second meeting to discuss the Sheriff's order restricting Mr. Hopkins' access to the operations of the jail. The Committee approved the reinstatement of Mr. Hopkins, and he returned to his duties as Jail Administrator.

 On July 3, 2001, the Sheriff once again relieved Mr. Hopkins of his duties as Jail Administrator, and an interim administrator was appointed by the Sheriff. Following the Sheriff's action, the Committee convened an emergency meeting. On a vote of six to one, the Committee again advocated for the reinstatement of Mr. Hopkins. After the vote, the Sheriff informed the Committee Mr. Hopkins would not be reinstated. Thereafter, on July 6, 2001, the Sheriff denied Mr. Hopkins physical access to the jail. Three days later, on July 9, 2001, the Unified Government filed the instant motion. As a preliminary matter, the court finds it has subject matter jurisdiction over this proceeding, for the court retains the authority and jurisdiction to force compliance with its own orders.

*Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990).

## II. STANDARD OF REVIEW

 The primary purpose of a civil contempt sanction is "to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law v. National Collegiate Athletic Ass'n,* 134 F.3d 1438, 1442 (10th Cir.1998) (internal citation and quotation marks omitted). *See also O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir.1992) (noting contempt sanctions' dual roles of coercion and compensation). To be successful, the movant must establish, by clear and convincing evidence, "that a valid court order existed, that the [nonmovant] had knowledge of the order, and that the [nonmovant] disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.,* 159 F.3d 1311, 1315 (10th Cir.1998) (citing *Roe v. Operation Rescue,* 54 F.3d 133, 137 (3d Cir.1995)). Once the required showing has been established, the nonmovant may avoid a finding of contempt if it demonstrates it attempted compliance in good faith based on a reasonable interpretation of the order. *See Braintree Labs., Inc. v. Nephro–Tech, Inc.,* 99 F.Supp.2d 1300, 1303 (D.Kan.2000) (citing *Spectra Sonics Aviation, Inc. v. Ogden City,* 931 F.2d 63 (10th Cir.1991) (table)).

## III. DISCUSSION

 As to the Unified Government's prima facie showing, it is conceded it has satisfied the first and second elements: the January 8, 2001, Order is valid, and the Sheriff's knowledge is evidenced by his counsel's approval of the Order. The contested element is whether the Sheriff disobeyed the Order. The Unified Government asserts the Sheriff's actions in

terminating Mr. Hopkins was in contravention of the following order language:

> The Jail Administrator of the Jail shall respond equally to the Committee and to the Sheriff concerning matters relating to the operation of the Jail. When and if there are disputes concerning issues concerning the operation of the Jail, which issues are within the purview of the authority granted to the Committee by the previous orders entered by this Court concerning the Committee and any description of that Committee's authority set forth in the Wyandotte County Detention Center Policies and Procedure Manual, then a majority vote by the members of the Committee shall govern concerning those disputes and the Jail Administrator and the Sheriff shall perform their duties, relating to the Jail, as directed by the majority vote of that Committee.

(January 8, 2001, Order at 3). On the other hand, the Sheriff argues his actions were outside the dictates of the above language, so his act of terminating Mr. Hopkins did not run afoul of the court's Order.[3]

To determine whether the Sheriff violated the court's Order, it is helpful to first understand what affect or impact the Order had on the relative position of the three embattled parties. First, as mentioned above, prior to January 8, 2001, the Jail Administrator was directly accountable to the Sheriff. There was not, nor has there ever been prior to January 8, 2001, a procedure ordered by this court in which the Committee dictated or controlled the Jail Administrator. Whether Mr. Hopkins served solely at the pleasure of the Sheriff or whether the Sheriff's power to fire or discipline was constrained by employment policies embedded within the Unified Gov-

ernment and/or Wyandotte County, is not critical or relevant to the immediate issue of whether the Sheriff violated the court's Order. The court's inquiry must remain focused on the singular issue being adjudicated in these proceedings.

Second, it is abundantly evident to all concerned that the January 8, 2001, Order mandated a radical departure from the norm, for without question, the Jail Administrator was now burdened with the yokes of two masters. However, this dual control was not absolute, for the grant of power was modified by the phrase "concerning matters relating to the operation of the Jail." (January 8, 2001, Order at 3).

Third, the second sentence of the contested order language creates a means for dispute resolution. The plan is activated if there are disputes between the Sheriff and the Jail Administrator. Once again, however, this policy of dispute resolution is modified by the phrase "issues concerning the operation of the Jail . . . ." (January 8, 2001, Order at 3). The implementation of the resolution plan is further modified by a two-part phrase, which restricts the plan to issues pertaining to the authority of the Committee granted by: (1) previous court orders or (2) the Wyandotte County Detention Center Policies and Procedures Manual ("Manual").

This paradigm of shared control and dispute resolution was the product of the parties' eleventh hour negotiations. The parties now disagree as to the meaning of their own language.

As a starting point, the court finds the present situation is controlled by the dispute resolution plan established within the second sentence of the contested order language. The first sentence is directed

---

3. The court reminds the parties that any procedures implemented under the January 8, 2001, Order are temporary and subject to the court's final disposition of the Unified Government's requested modification.

solely at the Jail Administrator, so the sentence fails to establish any mandates, which the Sheriff could have arguably refused to follow. Within the third and final clause of the second sentence, however, the Sheriff is ordered to conform his actions to the majority vote of the Committee. (January 8, 2001, Order at 3) ("the Sheriff *shall* perform [his] duties") (emphasis added). The Unified Government alleges the Sheriff should be held in contempt for his refusal to abide by the dispute resolution plan. (Unified Government Reply at 11) ("The Unified Government has presented before this court evidence that there was in fact a dispute concerning the operation of the jail and that the Sheriff did not abide by the majority vote of the [Committee].").

For purposes of the present motion, the court accepts, *arguendo*, the Unified Government's position that termination of the Jail Administrator was an issue "concerning the operation of the Jail." (*Id.*). However, the court does not accept the Unified Government's position that "[t]he [January 8, 2001 Order] clearly states that *all* disputes concerning the operation of the jail must be resolved by a majority vote of the [Committee]." (Unified Government Reply at 11) (emphasis added). The Unified Government's statement completely ignores the modifying clause, which triggers and circumscribes the "majority veto" power of the Committee. The court finds this modifier is exclusive, meaning only those issues satisfying one of the two identified avenues of authority are properly governed by the dispute resolution plan. In brief, if the Committee's authority does not extend to the hiring and/or firing of Mr. Hopkins, then the plan was not triggered and the Sheriff was under no duty to abide by the Committee's vote.

Therefore, the court proceeds to the question of whether the Sheriff's actions regarding Mr. Hopkins was an "issue" within the Committee's "purview of authority" as granted under either the court's prior orders or as set forth in the Manual.

## A. Court Orders

The court initially ordered the creation of the Committee in the March 30, 1987 Consent Judgment and Decree. The enacting language is as follows: "To provide for orderly implementation of the foregoing overcrowding restriction, this Court directs that the defendants establish and convene a Jail Population Control Committee .... This committee should meet to develop plans and cooperative measures in order to ensure compliance by the defendants with this part ...." (March 30, 1987 Consent Decree at 8). The "part" alluded to in the consent judgment and decree concerned "the interim period between the date of this Judgment and Decree and the occupancy of the new jail facility, or any other facility used as a jail shall operate under the continuing orders of this Court." (*Id.*). The "overcrowding restriction" concerned the total number of inmates allowed in the preexisting jail and the manner in which said inmates were housed. (*Id.* at 8–9).

The Committee's duties were later refined in the court's March 14, 1988, Order Establishing Jail Population Control Committee (Doc. 111). The March 14, 1988, Order established a procedure by which the Committee could formulate a plan to reduce the total number of inmates at the old jail. The Committee's duty to formulate a population reduction plan was triggered once the total number of inmates exceed 110 or upon knowledge that the inmates were being housed without proper bunks or beds. (*Id.* at 3). The authority of the Committee was described as follows: "The Committee shall perform duties as provided below and such other duties re-

lating to inmate population control as may in the future be prescribed by this Court." (*Id.* at 2).

With the completion of the new jail in 1989, the Committee's role and authority diminished. In 1993, however, all of the respective parties asked the court to reinstate the Committee. Thereafter, on June 4, 1993, the court issued its Order Reestablishing Jail Population Control Committee (Doc. 191). The 1993 Order mirrored the original 1988 Order. In particular, the 1993 Order provided that the Committee's duty to formulate a plan to reduce overpopulation was triggered once the new jail's population exceeded 270 inmates. (June 4, 1993, Order at 2). The overall authority of the Committee was expressed as follows:

> The Committee shall perform [its] duties as provided in the previous order of this Court entered March 14, 1988, establishing the Jail Population Control Committee and such other duties relating to inmate population control as may be prescribed herein, *or as may be determined necessary within the discretionary, power and authority of such committee.*

(*Id.*) (emphasis added). No other relevant orders have been entered by the court.[4]

A review of these orders convinces the court that the Committee's authority, as granted by this court prior to January 8,

2001, was strictly limited to those issues directly impacting the jail's inmate population.[5] While not argued by the Unified Government, the only order language, which arguably could broaden the Committee's authority to include the present situation, is found within the above indented quotation. However, the "discretionary" authority granted the Committee is still limited, for it may only be exercised in an effort to address concerns with the jail's inmate population. The decision of who holds the position of Jail Administrator has simply not been proven by the Unified Government to be an issue, which concisely impacts or affects the jail's inmate population. As such, the issue was not "within the purview of authority granted to the Committee by the previous orders entered by this Court," so the court finds that the Sheriff was not bound by the Committee's vote.

### B. Manual

The Manual contains a single section regarding the authority and duties of the Committee. (Unified Government Reply, Ex. Q). Within this section, the Manual replicates the duties established by the court in its June 4, 1993, Order. In particular, the Manual reemphasizes that the Committee's discretionary authority extends only to matters directly concerning

---

4. Neither of the parties specifically identified the orders listed above. This omission is reflective of the Unified Government's overall denial of the inherent limitations imposed upon the dispute resolution plan by the explicit language of the court's January 8, 2001, Order.

5. In an attempt to demonstrate the expansion of the Committee's authority by court order, the Unified Government states: "The power and authority of the [Committee] has been ordered by this Court to ensure a proper administration of the jail. The [Committee]'s authority regarding the operation of the jail has increased through the years, demonstrat-

ing the Court's realization of the importance of the [Committee]." (Unified Government Reply at 14). Absent from the Unified Government's filing, however, is *any* citation to *any* order entered before January 8, 2001, which demonstrates such expanded authority. The Unified Government is exercising in speculation in order to delve into the subjective intent of the court. Such argument is wholly futile, for the court is bound to gauge the Sheriff's actions against the actual language of the January 8, 2001, Order, which explicitly requires that the Committee's relevant authority flow from court *orders* as compared to inferred judicial intent.

the jail's inmate population. The Manual states: "The Committee shall perform duties as provided below and such other duties relating to inmate population control as may be in the future determined necessary within the discretion, power, and authority of the Committee." (*Id.*). The court finds, therefore, that the authority granted to the Committee by the Manual is equivalent to the authority granted by the court's previous orders. Therefore, the Unified Government has failed to demonstrate that the termination of Mr. Hopkins was an issue qualifying, under either avenue of authority, for inclusion within the resolution plan adopted by the January 8, 2001, Order.

## IV. CONCLUSION

The court finds the Unified Government has failed to carry its burden in demonstrating the Sheriff's disobedience to the court's January 8, 2001, Order. This conclusion is reached after careful consideration of the explicit language of the Order. While the Unified Government interprets the Order as requiring the Sheriff to bow to the will of the Committee's vote on all operational issues, the January 8, 2001, Order specifically tailored the Sheriff's subservient behavior to track with the breadth of the Committee's court ordered authority. The issue of Mr. Hopkins' employment as Jail Administrator did not fall within this grant of authority, so the Sheriff was not bound to follow the Committee's vote. The court has considered and rejected all of the Unified Government's arguments. In sum, the Sheriff's behavior did not run afoul of the court's January 8, 2001, Order.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Unified Government of Wyandotte County/Kansas City, Kansas' Motion for Contempt (Doc. 237) is denied.